No. _____

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

AETNA INC., AETNA LIFE INSURANCE COMPANY, and
OPTUMHEALTH CARE SOLUTIONS, INC.,

*Defendants-Petitioners*,

v.

SANDRA M. PETERS,
on behalf of herself and all others similarly situated,

*Plaintiff-Respondent,*

On Petition for Permission to Appeal from the
United States District Court for the Western District of North Carolina,
Case No. 1:15-cv-00109-MR
The Honorable Martin K. Reidinger, District Judge

**DEFENDANT AETNA'S PETITION FOR PERMISSION**
**TO APPEAL ORDER GRANTING CLASS CERTIFICATION**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)**

E. Thomison Holman
NC Bar No. 19380
HOLMAN LAW, PLLC
56 College Street, Suite 302
Asheville, NC 28801
Tel: (828) 252-7381

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _____    Caption: _Aetna Inc., et al. v. Sandra M. Peters_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

Aetna Inc._____
(name of party/amicus)

_____

who is _____Petitioner_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☑YES ☐NO

2.    Does party/amicus have any parent corporations?  ☑YES ☐NO
    If yes, identify all parent corporations, including all generations of parent corporations:

    Aetna Inc. is 100% owned by CVS Pharmacy Inc., which in turn is 100% owned by CVS Health Corporation

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☑YES ☐NO
    If yes, identify all such owners:
    CVS Health Corporation, the ultimate parent of Aetna Inc., is a publicly-traded corporation. Additionally, Aetna Inc., Aetna Life Insurance Co.'s parent, is a publicly-traded corporation.

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?   ☐YES ☑NO
If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?   ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Earl B. Austin                        Date:        8/22/2023

Counsel for: Aetna Inc. and Aetna Life Ins. Co.

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _____     Caption: __Aetna Inc., et al. v. Sandra M. Peters_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Aetna Life Insurance Co._____
(name of party/amicus)

_____

 who is _____Petitioner_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?    ☑YES ☐NO
      If yes, identify all parent corporations, including all generations of parent corporations:

      Aetna Life Insurance Co. is 100% owned by Aetna Inc. Aetna Inc. is 100% owned by CVS
      Pharmacy Inc., which in turn is 100% owned by CVS Health Corporation.


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?    ☑YES ☐NO
      If yes, identify all such owners:
      Aetna Inc., Aetna Life Ins. Co.'s parent, is a publicly-traded corporation. Additionally, CVS
      Health Corp., the ultimate parent of Aetna Inc., is a publicly traded corporation.

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Earl B. Austin _____    Date: _____8/22/2023_____

Counsel for: Aetna Inc. and Aetna Life Ins. Co. _____

Print to PDF for Filing

tom@holmanlawwnc.com
Earl B. Austin
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
Tel: (212)408-2500
earl.austin@bakerbotts.com

*Counsel for Defendants-Petitioners*
*Aetna Inc. and Aetna Life Insurance*
*Company*

# TABLE OF CONTENTS

INTRODUCTION ................................................................... 1

STATEMENT OF FACTS ...................................................... 5

    A.   Factual Background. ............................................. 5

    B.   Procedural History................................................ 6

    C.   The Certified Classes. ........................................... 7

QUESTIONS PRESENTED ..................................................... 8

RELIEF REQUESTED ........................................................... 10

REVIEW UNDER RULE 23(F) ............................................... 10

REASONS THE APPEAL SHOULD BE GRANTED ........................ 11

    A.   In certifying the Plan Claim Class, the district
        court declined to consider variations in the
        administrative service contracts and
        communications that govern Aetna's
        relationships with more than 1,954 different
        plans. ......................................................... 13

    B.   The Member Claim Class is an impermissible fail-
        safe class that will require threshold mini-trials
        for each of 87,754 individual members simply to
        determine eligibility. ......................................... 18

    C.   The classes the district court certified are not
        amenable to a class-wide trial. .............................. 23

CONCLUSION .................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bigelow v. Syneos Health, LLC,*
No. 5:20-CV-28-D, 2020 WL 5078770 (E.D.N.C. Aug. 27, 2020)
(unpublished) ............................................................................. 21, 22

*Boyd v. Metro Life Ins. Co.,*
636 F.3d 138 (4th Cir. 2011). Cert. Order ........................... 3, 9, 14, 16

*Branch v. Gov't Emps. Ins. Co.,*
323 F.R.D. 539 (E.D. Va. 2018) ..................................................... 23

*Broussard v. Meineke Disc. Muffler Shops, Inc.,*
155 F.3d 331 (4th Cir. 1998) .......................................................... 17

*Byrd v. Aaron's, Inc.,*
784 F.3d 154 (3d Cir. 2015) ........................................................... 21

*Chittick v. Freedom Mortg. Corp.,*
No. 1:18-cv-01034, 2021 WL 5326407 (E.D. Va. May 7, 2021) .......... 25

*Comcast Corp. v. Behrend,*
569 U.S. 27 (2013) ....................................................................... 12

*Cordoba v. DIRECTV, LLC,*
942 F.3d 1259 (11th Cir. 2019) ...................................................... 21

*EQT Prod. Co. v. Adair,*
764 F.3d 347 (4th Cir. 2014) ..................................................... 12, 21

*Gariety v. Grant Thornton, LLP,*
368 F.3d 356 (4th Cir. 2004) .......................................................... 12

*In re EpiPen ERISA Litig.,*
No. 17-1884 (PAM/HB), 2020 WL 4501925 (D. Minn. Aug. 5, 2020). 16

*In re Hydrogen Peroxide Antitrust Litig.,*
552 F.3d 305 (3d Cir. 2008) ........................................................... 23

*In re Nexium Antitrust Litig.*,
  777 F.3d 9 (1st Cir. 2015) ................................................................... 21

*Krakauer v. Dish Network, L.L.C.*,
  925 F.3d 643 (4th Cir. 2019)....................................................... 22, 23

*Lienhart v. Dryvit Sys. Inc.*,
  255 F.3d 138 (4th Cir. 2001)....................................................... 10, 11

*McCaster v. Darden Rests., Inc.*,
  845 F.3d 794 (7th Cir. 2017).............................................................. 21

*Mebane v. GKN Driveline N.A., Inc.*,
  No. 1:18-CV-892, 2022 WL 16961496 (M.D.N.C. Nov. 16, 2022)....... 21

*Mr. Dee's Inc. v. Inmar, Inc.*,
  No. 1:19-CV-141, 2022 WL 1750537 (M.D.N.C. Apr. 27, 2022) ......... 21

*Nucor Corp. v. Brown*,
  760 F.3d 341 (4th Cir. 2014)................................................................. 8

*Orduno v. Pietrzak*,
  932 F.3d 710 (8th Cir. 2019).............................................................. 21

*Peters v. Aetna Inc.*,
  2 F.4th 199 (4th Cir. 2021) ....................................................... *passim*

*Piotrowski v. Wells Fargo Bank, NA*,
  DKC-11-3758, 2015 WL 4602591 (D. Md. July 29, 2015) .................. 25

*Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*,
  654 F.3d 618 (6th Cir. 2011)............................................................... 17

*Randleman v. Fidelity Nat'l Title Ins. Co.*,
  646 F.3d 347 (6th Cir. 2011)............................................................... 21

*Rose v. SLM Fin. Corp.*,
  254 F.R.D. 269 (W.D.N.C. 2008)........................................................ 17

*Spotswood v. Hertz Corp.*,
  No. RDB-16-1200, 2019 WL 498822 (D. Md. Feb. 7, 2019)............... 25

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
  445 F.3d 311 (4th Cir. 2006)..............................................................25

*Torres v. Mercer Canyons, Inc.*,
  835 F.3d 1125 (9th Cir. 2016)............................................................21

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ..........................................................11, 12, 22, 23

**RULES**

Fed. R. Civ. P. 23 ...........................................................................*passim*

**OTHER AUTHORITIES**

28 U.S.C. § 2072(b) ...........................................................................23

29 U.S.C. § 1001, et seq........................................................................1

29 U.S.C. § 1104..................................................................................16

29 U.S.C. § 1132...............................................................................2, 6, 7

Defendants-Petitioners Aetna Inc. and Aetna Life Insurance Company (collectively, "Aetna"), petition, pursuant to Rule 23(f) of the Federal Rules of Civil Procedure, for leave to appeal from the district court's order entered on June 5, 2023, granting Plaintiff-Respondent Sandra M. Peters' ("Peters") motion for class certification. The district court denied Aetna's timely motion to reconsider on August 8, 2023. Copies of the district court's orders of June 5, 2023 (the "Cert. Order") and August 8, 2023 (the "Recon. Order") are attached hereto as Exhibits A and B, respectively.

## **INTRODUCTION**

Peters brings this class action against Aetna and OptumHealth Care Solutions, Inc. ("Optum") (collectively "Defendants"), asserting claims pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"). She alleges that Aetna, as third-party administrator of certain health benefit plans, engaged in a scheme with its subcontractor Optum, whereby the plans and their members were charged Defendants' administrative fees disguised as medical expenses. She seeks purely equitable relief in the form of disgorgement, surcharge, and declaratory and injunctive relief under

ERISA § 502(a)(1), (2) and(3), on behalf of her own plan and other similarly situated plan sponsors (the "Plan Claim Class") and for herself individually and other similarly situated individual members of affected plans (the "Member Claim Class"). This matter is the subject of a previous decision from this Court. *See Peters v. Aetna Inc.*, 2 F.4th 199 (4th Cir. 2021).

The district court certified the two classes Peters proposes pursuant to FRCP 23(a) and (b)(3). In so doing, however, the court misconstrued a fundamental principle of ERISA and misapplied the requirements of Rule 23.

*First*, the Plan Claim Class is comprised of at least 1,954 different self-funded plan sponsors and focuses on alleged overcharges to the *plans* (not to the individual plan participants), an inquiry that necessarily turns on Aetna's obligations and compensation set by the administrative service contracts and communications *between Aetna and each plan sponsor* (as opposed to obligations to plan participants under plan documents). In certifying the class, however, the district court expressly declined to consider variations in the administrative contracts and communications between Aetna and the different plan sponsors, holding that such contracts and communications are not "documents and instruments governing the plan"

under this Court's decision in *Boyd v. Metro Life Ins. Co.*, 636 F.3d 138, 140 (4th Cir. 2011).  Cert. Order at 29 n. 14.

But the pivotal class-wide liability question the Plan Claim Class is supposed to answer—namely, whether Aetna violated its obligations to a particular plan sponsor—can *only* be answered by reference to the administrative contracts and communications that define Aetna's relationship with each plan sponsor.  Indeed, this Court itself previously looked to Aetna's administrative contract with the sponsor of Peters' plan for that very purpose.  *See Peters*, 2 F.4th at 210-11, 235-36.  The district court misconstrued the "plan document rule" from *Boyd* and thereby deprived Aetna of the ability to present the evidence most directly material to the very question the class is meant to answer.

*Second*, the Member Claim Class presents the individual claims of at least 87,754 participants of plans covered by the Aetna-Optum arrangement for the remedies of disgorgement/surcharge of any benefit the Defendants received at the expense of such members.  Cert. Order at 25-6.  The district court recognized, however—based on a previous holding from this Court (*see Peters*, 2 F.4th at 226-27)—that "[i]t does not appear that the Plaintiff would personally be entitled to any

disgorgement/surcharge proceeds because she suffered no loss in the aggregate as a result of the Defendants' alleged scheme." Cert. Order at 19 n. 9. The Court further noted that the Member Claim Class may require subclasses "to distinguish those participants/beneficiaries who suffered a net financial loss and those who did not." *Id.* at 34.

The Member Claim Class thus is an impermissible fail-safe class because to determine whether any individual class member would personally be entitled to any disgorgement/surcharge proceeds, the district court would first have to determine whether that particular individual personally suffered a net financial loss. The class violates the commonality and ascertainability requirements of Rule 23(a) and the predominance requirement of Rule 23(b)(3).

*Finally*, the district court made no analysis of how the court could possibly conduct a *class-wide* trial on either of the two classes. Instead, as to the Plan Claim Class, the court simply *presumed* that all 1,954 plans were governed by the same contracts and communications as Peters' plan—effectively denying Aetna the defense of the facts. As for the Member Claim Class, the court offered no explanation for how the necessary highly individualized claim-by-claim adjudication for 87,754

different members even would be *feasible* in a single trial.  Peters bears

the burden of proof on those issues, and the court cannot simply to *presume*,

or require that Defendants *disprove*, Rule 23's requirements.

## STATEMENT OF FACTS

### A.    Factual Background.[1]

Peters is a former member of an ERISA health benefit plan (the

"Mars Plan" or "the Plan") sponsored and self-funded by her husband's

former employer, Mars, Inc. ("Mars").  Mars retained Aetna, under a

Master Services Agreement (the "Mars MSA"), to serve as the claims

administrator to process claims under the Mars Plan.  As part of its

services to the Mars Plan, Aetna agreed to provide Plan participants

access to a network of health care providers.

Aetna entered into a series of agreements with Optum, independent

of any particular plan, whereby Optum agreed to make available its

network of contracted physical therapists, occupational therapists, and

chiropractors as part of Aetna's network of health care providers.  In

return, Aetna agreed to pay Optum flat, per-visit rates for these services;

---

[1] The factual statements herein are drawn from the record in the
district court.

Optum, in turn, paid the health care providers pursuant to its contracts with those providers.  The Aetna-Optum bundled rate was usually, but not always, higher than the rate Optum paid the provider.

Peters alleges that Defendants overcharged plans and their members by not clearly disclosing the nature of the Optum bundled rate. Peters brings this action individually and on behalf of two classes:  a class of individuals who obtained services pursuant to the Aetna-Optum arrangement and a class of self-insured plans that insured those individuals.  Peters asserts claims under ERISA § (a)(2), and (a)(3) for the following relief: (1) disgorgement and surcharge for the Defendants to return any improper gains; and (2) declaratory and injunctive relief.[2]

### B.   Procedural History.

Peters filed this action on June 12, 2015.  The district court denied Peters' motion for class certification on March 29, 2019, and granted summary judgment for Defendants on September 16, 2019.   Peters

---

[2] Peters also originally sought restitution for amounts allegedly overcharged to individual Aetna members and plans, but she no longer seeks a restitution remedy, either for the Mars Plan specifically or on a class-wide basis for other individuals or plans.  *See* Cert. Order, at 12-13. She has elected to pursue "equitable relief solely in the form of disgorgement, surcharge, and declaratory and injunctive relief." *Id.* at 12.

appealed both decisions. On June 22, 2021, a panel of this Court affirmed in part and reversed or vacated in part the orders of the district court. *See Peters*, 2 F.4th at 199.

The panel affirmed the district court's order granting summary judgment as to Peters' individual claim for restitution under ERISA § 502(a)(1) and (3) because it was "apparent from the undisputed evidence that she suffered no direct financial injury from [Defendants'] action." *Id.* at 223. The panel otherwise reversed or vacated the district court's summary judgment and class certification orders. *Id.* at 227, 244-45. The panel remanded to the district court, with particular instructions that the court consider Peters' claims for disgorgement, surcharge, and declaratory and injunctive relief under § 502 (a)(1) and (3), and her claims on behalf of the Mars Plan for disgorgement, surcharge, and declaratory and injunctive relief under § 502(a)(2). *Id.* at 244.[3]

## C.   The Certified Classes.

On June 5, 2023, the district court granted Peters' motion for class certification and certified two classes pursuant to FRCP 23(a) and (b)(3):

---

[3] The panel also remanded Peters claim for restitution under § 502(a)(2) as to the Mars Plan. *Id.* at 227. Peters has since abandoned that claim. *See* Cert. Order at 12-13.

- <u>Plan Claim Class</u>: All participants or beneficiaries of self-insured ERISA health insurance plans administered by Aetna for which plan responsibility for a claim was assessed using an agreed rate between Optum and Aetna that exceeded the provider's contracted rate with Optum for the treatment provided.

- <u>Member Claim Class</u>: All participants or beneficiaries of ERISA health insurance plans insured or administered by Aetna for whom coinsurance responsibility for a claim was assessed using an agreed rate between Optum and Aetna that exceeded the provider's contracted rate with Optum for the treatment provided.

Cert. Order at 43.

Defendants filed a timely motion for reconsideration on June 19, 2023. Defendants' Motion to Reconsider Order Granting Class Certification (attached as Exhibit C). The district court summarily denied that motion on August 8, 2023. *See* Recon. Order.

Aetna now timely presents this petition pursuant to Rule 23(f).[4]

## QUESTIONS PRESENTED

1. As to the Plan Claim Class, whether the administrative contracts between Aetna and self-funded ERISA plans, and Aetna's

---

[4] This petition is timely as it was filed within 14 days of the district court's denial of the Defendants' motion for reconsideration. *Nucor Corp. v. Brown*, 760 F.3d 341, 343 (4th Cir. 2014) (holding that Rule 23(f)'s fourteen day time period "begins anew" after the court rules on a timely motion to reconsider its class certification order).

course of dealing with those plan sponsors, are relevant evidence on the question of Aetna's rights and obligations as to those plans consistent with this Court's decision in *Boyd v. Metro Life Ins. Co.*, 636 F.3d 138, 140 (4th Cir. 2011)?

2.　　As to the Plan Claim Class, whether the district court erred in certifying a class comprised of 1,954 different self-funded plans without considering variances in the administrative agreements and course of dealing between Aetna and each plan sponsor?

3.　　As to the Member Class Claim, whether the district court erred in certifying a class that is ascertainable only by conducting threshold mini-trials for each of 87,754 individual members simply to determine eligibility?

4.　　Whether the Member Claim Class is an impermissible fail-safe class?

5.　　Whether the two classes the district court certified meet the other requirements of Rule 23?

6.　　Whether the district court erred in certifying the two classes here without any analysis of how the court or the parties could feasibly conduct a class-wide trial on either class?

## RELIEF REQUESTED

Aetna seeks leave, pursuant to Rule 23(f), to appeal the order certifying two classes, entered by the district court on June 5, 2023.

## REVIEW UNDER RULE 23(F)

"Permission to appeal [under Rule 23(f)] may be granted or denied on the basis of any consideration that the court of appeals finds persuasive." *Lienhart v. Dryvit Sys. Inc.*, 255 F.3d 138, 142 (4th Cir. 2001).[5] The Fourth Circuit has adopted the following test to guide the exercise of its discretion:

> (1) whether the certification ruling is likely dispositive of the litigation; (2) whether the district court's certification decision contains a substantial weakness; (3) whether the appeal will permit the resolution of an unsettled legal question of general importance; (4) the nature and status of the litigation before the district court (such as the presence of outstanding dispositive motions and the status of discovery); and (5) the likelihood that future events will make appellate review more or less appropriate.

*Id.* at 144, 146.

In assessing whether the appeal will permit the resolution of an unsettled legal question of general importance, the Court considers "the

---

[5] Internal citations, quotations and emphasis are omitted from citations unless otherwise noted.

impact of the questions at issue to related actions involving the same or similarly-situated parties." *Id.* at 144. Moreover, the "substantial weakness" prong operates on a sliding scale; where a district court's certification decision is manifestly erroneous, the issues involved need not be of general importance, nor must the certification decision constitute a "death knell" for the litigation. *Id.* at 145.

Finally, the commentary to Rule 23(f) itself notes that appellate review is especially appropriate "[w]here an order granting certification effectively ends the litigation because it produces irresistible pressure on defendant to settle." *Id.* at 143.

## REASONS THE APPEAL SHOULD BE GRANTED

The district court certified the two classes here pursuant to Rule 23(a) and (b)(3).

Rule 23(a)(2) requires commonality. While the rule speaks in terms of common questions, "what matters to class certification . . . is not the raising of common 'questions' — even in droves — but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011) (emphasis original). Rule 23(a)(2) "is easy to misread" because

11

any competently crafted class complaint will raise common questions, *id.* at 349, but to support certification of a class, a question must be of such a nature that its determination "will resolve an issue that is central to the validity of each one of the claims in one stroke," *id.* at 350.

In addition, "Rule 23 contains an *implicit threshold requirement* that the members of a proposed class be readily identifiable." *Peters*, 2 F.4th at 242; *EQT Prod. Co. v. Adair,* 764 F.3d 347, 358 (4th Cir. 2014) (emphasis added). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate*." Id.*

Finally, Rule 23(b)(3) requires that "any questions of law or fact common to class members predominate over any questions affecting only individual members," a requirement that "is even more demanding" than Rule 23(a) commonality. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). To satisfy Rule 23(b)(3), Peters must do more than identify a common litigation-driving question that will generate a common answer. She must also show that other issues will not splinter the proposed classes into thousands of individualized inquiries. *See Gariety v. Grant Thornton, LLP,* 368 F.3d 356, 362-63 (4th Cir. 2004); *EQT Prod.,* 764 F.3d

at 366-67.

The two classes here satisfy none of these requirements.

**A.  In certifying the Plan Claim Class, the district court declined to consider variations in the administrative service contracts and communications that govern Aetna's relationships with more than 1,954 different plans.**

The district court recognized that Aetna, in its role as third-party claims administrator for self-funded plans, receives compensation from sponsors of those plans in exchange for providing administrative services—which fees and services are set forth in "administrative services agreements."  Cert. Order at 5.

Aetna offered evidence showing that its administrative services contracts vary significantly from plan to plan, including as to the definition of Aetna's services and compensation.  Defendants' Brief in Opposition to Plaintiffs Motion for Class Certification at 18 (attached as Exhibit D).[6]  Equally important, Aetna's communications with plan sponsors also vary and show that plans knew about the Aetna-Optum

---

[6] Aetna has attached its briefing, but not the exhibits to that briefing given that they are voluminous.  Aetna can provide these materials upon request.  Aetna notes, however, that the error this petition raises is that the district court certified the two classes here *without even considering* this evidence.

relationship. *Id.* For example, Aetna sent letters to plans describing how the Aetna-Optum relationship works—including an explanation that the network vendor's contracted rate includes an administrative fee for any delegated services by the vendor. *Id.* Aetna's account teams also had other plan-specific communications—ranging from emails to calls to meetings—with plan sponsors about the Aetna-Optum relationship. *Id.* at 18-19.

In certifying the Plan Claim Class, however, the district court expressly declined to consider those variations in the administrative service contracts and communications between Aetna and the 1,954 plan sponsors at issue here, holding that "[s]uch contracts and communications. . . are not 'documents and instruments governing the plan' and therefore not controlling on the issue of the Defendants' obligations under the plans." Cert. Order at 29 n.14 (quoting *Boyd*, 636 F.3d at 140).[7]

But that holding ignores the pivotal issue for the Plan Claim Class,

---

[7] In finding that the Plan Claim Class satisfied the requirements of Rule 23(a) and (b)(3), the court compared the plan documents for the Mars Plan with the plan documents from a random sample of only 21 other plans. Cert. Order at 29-32. But the court expressly declined to consider the *administrative service agreements* and *communications* between Aetna and the various plan sponsors, which are the agreements that established Aetna's rights and obligations as to each particular *plan sponsor*. *Id.* at 29 n. 14.

which is meant to "address *plan* losses." Cert. Order at 24–25 (emphasis in original). The class thus focuses on alleged overcharges to the *plans*, an inquiry that necessarily turns on Aetna's obligations and compensation set by the administrative service contracts and communications *between Aetna and each plan sponsor*. Whether Aetna overcharged a particular plan depends entirely on Aetna's agreement and communications with that particular plan sponsor.

In the case of the Mars Plan, for example, the plan document itself did not set Aetna's administrative responsibilities or fees; rather, Aetna's services and compensation were set by the Mars MSA. *Peters*, 2 F.4th at 210, 235-36. The Fourth Circuit panel noted that the operative question with regard to Aetna's fiduciary obligations to the Mars Plan is whether the Aetna-Optum arrangement imposed an improper administrative fee upon the Mars Plan in violation of the MSA. *Id.* at 230-31. And to answer that question, the panel specifically looked to the "MSA between Mars and Aetna [that] contained the Fee Schedule" and that established both Aetna's obligations to Mars and Aetna's compensation. *Id.* at 235. The district court here erred by assessing Aetna's obligations to the plans without analyzing Aetna's administrative services agreements and

communications with the plan sponsors.[8]

Peters made no showing—nor even seriously attempted to show—that each and every one of the 1,954 administrative contracts and communications at issue here—or even most of them—define Aetna's obligations and compensation using the same contractual language as the Mars MSA and the same course of dealing as between Aetna and Mars.  And it is impossible to answer that question *en masse* for all 1,954 plans by reference to Mars alone.  *See, e.g., In re EpiPen ERISA Litig.*, No. 17-1884 (PAM/HB), 2020 WL 4501925, at *5 (D. Minn. Aug. 5, 2020)

---

[8] The "plan documents rule" discussed in *Boyd* provides that plan administrators are to look to "the directives of the plan documents in determining how to disburse benefits."  636 F.3d at 140.  The rule follows the text of the ERISA statute, "which instructs employers to distribute benefits 'in accordance with the documents and instruments governing the plan.'"  *Id.* (quoting 29 U.S.C. § 1104(a)(1)(D)).  The purpose of the rule is to ensure that *plan beneficiaries* get the benefits to which they are entitled.  *Id.* at 141.

Nothing in the rule provides, however, that the district court can ignore the agreements and communications between the plan sponsor and the third-party administrator that define the administrator's services and compensation *as to the plan sponsor*—in the words of the statute itself, those agreements are necessarily "instruments governing the plan" on the question of what Aetna agreed to do and what each plan agreed to pay.  That is why the Fourth Circuit panel expressly looked to the Mars MSA to assess Aetna's obligations and compensation under the Mars Plan.  *See Peters*, 2 F.4th at 210-11, 235-36.

("Equity does not allow disgorgement of all profits but only those profits inequitably retained. Whether it was inequitable for any Defendant to retain a portion of the [disputed payments] will require reference to the contracts between each [defendant] and each plan. . . . Indeed, what the plan contracts provided with respect to retention of [the disputed payments] is essential to determining the existence of injury, even before any determination of the amount of that injury.").

The Plan Claim Class thus does not satisfy the commonality and ascertainability requirements of Rule 23(a) or the predominance requirement of Rule 23(b)(3). *See, e.g., Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 631 (6th Cir. 2011) (denying Rule 23(b)(3) class based on variations in administrative services agreements); *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998) (class violated Rule 23(a) because "plaintiffs simply cannot advance a single collective breach of contract action on the basis of multiple different contracts."); *Rose v. SLM Fin. Corp.*, 254 F.R.D. 269, 272 (W.D.N.C. 2008) (class violated Rule 23(a) because "the differences between the [contracts] raise the distinct possibility that there was a breach of contract with some class members, but not with

other class members. In such a case, the plaintiffs cannot amalgamate multiple contract actions into one.").

## B.    The Member Claim Class is an impermissible fail-safe class that will require threshold mini-trials for each of 87,754 individual members simply to determine eligibility.

The district court certified the Member Claim Class to present the individual claims of plan participants and beneficiaries for the remedies of disgorgement/surcharge and declaratory and non-prospective injunctive relief.  Cert. Order at 25-6.  The court recognized, however, that Peters herself would not "personally be entitled to any disgorgement/surcharge proceeds because she suffered no loss in the aggregate as a result of the Defendants' alleged scheme." *Id.* at 19 n. 9. The court further noted that the Member Claim Class might require subclasses "to distinguish those participants/beneficiaries who suffered a net financial loss and those who did not." *Id.* at 34.

The Aetna-Optum arrangement impacted individual participants differently because of its interaction with the coinsurance and deductible structure of participating plans. *See Peters*, 2 F.4th at 225.  Whenever a member sought a service from an Optum provider that was subject to the member's deductible—that is, when the charge was incurred before the

member had exhausted their yearly deductible—the member was charged (i.e., actually paid out of pocket) only the downstream rate charged by the Optum provider, but they were credited with the bundled rate toward their deductible. *See id.* at 226. In that circumstance, whenever the bundled rate exceeded the downstream provider rate—which is the only circumstance about which Peters complains here—the member actually *benefited* from that difference because they were credited with a higher rate toward their deductible (the bundled rate) than the amount they actually paid out of pocket (the provider rate). *Id.* As the Fourth Circuit panel recognized, under Peters' own theory, she "would have had to pay the entire deductible sum [] without the assistance of the bundled rate inflating her ability to meet that figure." *Id.*

For that reason, the panel held the determination whether Peters suffered any net financial loss required an individualized calculation comparing what she "would have paid each year in the aggregate had her claims excluded Optum's administrative fee (*i.e.,* had she been charged only her health care provider's Negotiated Charge) with what she actually paid on her claims." *Id.* In Peters' case, that yearly calculation

"showed that Peters' 'gains' exceeded any 'losses' or she broke even." *Id.* The panel found that Peters thus "avoided paying 'greater participant responsibility'. . .when all of her health care claims are considered. Therefore, Peters experienced no direct financial injury (but rather a net gain) based on the bundled rate scheme in the aggregate." *Id.* at 227.

The Member Claim Class violates Rule 23(a)'s commonality and ascertainability requirements, as well as Rule 23(b)(3)'s predominance requirement, because to determine whether any individual class member would personally be entitled to a disgorgement/surcharge remedy, the district court would first have to determine whether that particular individual personally suffered a net financial loss—which, in turn, would require precisely the same claim-by-claim, year-by-year analysis of each member's aggregate benefit claims that the district court and the Fourth Circuit performed to adjudicate the merits of Peters' individual claim. *See id.* at 225-27. This is because, in many instances, members actually *benefited* from the Optum fee—because Aetna gave them credit for the fee toward their deductible and cost sharing even though they did not actually pay the fee. *See id* at 225-26. There is no universal, class-wide shortcut for this individualized calculation.

The Member Claim Class is what the Fourth Circuit has described as a "fail-safe" class—that is, a class "defined so that whether a person qualifies as a member [of the class] depends on whether the person has a valid claim." *EQT Prod.*, 764 F.3d at 360 n.9 (4th Cir. 2014); *see also Orduno v. Pietrzak*, 932 F.3d 710, 716 (8th Cir. 2019). Courts in this Circuit have found fail-safe classes improper, following the example of almost every other circuit court of appeals that has considered the issue. *See Mr. Dee's Inc. v. Inmar, Inc.*, No. 1:19-CV-141, 2022 WL 1750537, at *2 (M.D.N.C. Apr. 27, 2022) (quoting *Bigelow v. Syneos Health, LLC*, No. 5:20-CV-28-D, 2020 WL 5078770, at *4 (E.D.N.C. Aug. 27, 2020) (unpublished)); *Mebane v. GKN Driveline N.A., Inc.*, No. 1:18-CV-892, 2022 WL 16961496, at *3-4 (M.D.N.C. Nov. 16, 2022); *see also Orduno*, 932 F.3d at 716–17; *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1276–77 (11th Cir. 2019); *McCaster v. Darden Rests., Inc.*, 845 F.3d 794, 799 (7th Cir. 2017); *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016); *In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 n.19 (1st Cir. 2015); *Byrd v. Aaron's, Inc.*, 784 F.3d 154, 167 (3d Cir. 2015); *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011).

Fourth Circuit courts have rejected fail-safe classes for two reasons. *First*, fail-safe classes violate the ascertainability requirement of Rule 23. *Id.* "Under this principle, . . . a class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 655 (4th Cir. 2019). Because a fail-safe class requires a court to inquire into the merits of the underlying case to identify the members of the class, fail-safe class definitions violate those principles. *Bigelow*, 2020 WL 5078770 at *4.

*Second*, in a fail-safe class, "a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Bigelow*, 2020 WL 5078770, at *4. "A fail-safe class action leaves a defendant in a 'heads, I win. . . tails, I can sue again' situation, contravening the truism that class actions 'should resolve an issue that is central to the validity of each one of the claims in *one* stroke.'" *Id.* at *5 (quoting *Dukes*, 564 U.S. at 350).

The Member Claim Class here is a classic fail-safe class—membership in the class can be defined only by first determining, on an individual case-by-case basis for each and every one of the 87,754 potential members, whether they qualify for a remedy. The Fourth

Circuit has made clear that "class litigation should not move forward when a court cannot identify class members without extensive and individualized fact-finding or mini-trials." *Krakauer*, 925 F.3d at 658. And "[t]he possibility that some class members did not suffer injuries [also] causes individual injury issues to predominate" under Rule 23(b)(3). *Branch v. Gov't Emps. Ins. Co.*, 323 F.R.D. 539, 552 (E.D. Va. 2018).

## C.    The classes the district court certified are not amenable to a class-wide trial.

The elements of Rule 23 are designed to ensure that a class action will provide a fair and efficient—and *feasible*—vehicle for adjudicating the merits of the class claims.  A one-for-all trial requires one-for-all evidence, so a district court "must formulate some prediction as to how specific issues will play out to determine whether common or individual issues predominate." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008).  Moreover, the Rules Enabling Act (28 U.S.C. § 2072(b)) prohibits certification of a class "on the premise that [the defendant] will not be entitled to litigate its . . . defenses to individual claims." *Dukes*, 564 U.S. at 367.

The district court made no analysis of how the court could possibly conduct a class-wide trial on either of the two classes here. As to the Plan Claim Class, the court did not explain how the court or the parties could sort through the evidence relevant to 1,954 different self-funded plans— each with its own set of administrative service contracts and related plan documents, as well as separate communications with Aetna regarding its fees and services and the operation of the Aetna-Optum arrangement— to ascertain which, if any, plans might qualify for a disgorgement remedy. Instead, the court expressly *ignored* the evidence of the variations among plans and simply *presumed* that all 1,954 plan sponsors were governed by the same contracts and communications as the Mars Plan.

Nor did the court explain how it could resolve, in a single class-wide trial, the individual claims of each of the 87,754 members of the Member Claim Class. The court would have to make a threshold determination, for each individual member, what that member "would have paid if her claims excluded Optum's administrative fee." *Peters*, 2 F.4th at 225. And to make that individualized determination, the court would have to "consider[] *all* of [that member's] health care claims for a given calendar year." *Id.* at 224 (original emphasis). But the court offered no

explanation for how such a highly individualized claim-by-claim adjudication for 87,754 different members even would be *feasible* in a single class-wide trial.

Peters bears the burden of proof on those issues. *See, e.g.*, *Thorn v. Jefferson-Pilot Life Ins. Co.,* 445 F.3d 311, 321 (4th Cir. 2006) ("[W]e have stressed in case after case that it is *not the defendant* who bears the burden of showing that the proposed class *does not comply* with Rule 23, but that it *is the plaintiff* who bears the burden of showing that the class *does comply* with Rule 23."). Nor can Peters shift this burden to require Defendants to ascertain eligible class members from their files. *See, e.g., Spotswood v. Hertz Corp.*, No. RDB-16-1200, 2019 WL 498822, at *6 (D. Md. Feb. 7, 2019) (denying class certification where plaintiffs "gloss[ed] over" complications of requiring defendants to search through thousands of claim records to isolate and fit class members into plaintiffs' proposed categories for the class); *Piotrowski v. Wells Fargo Bank, NA*, DKC-11-3758, 2015 WL 4602591, at *16 (D. Md. July 29, 2015) (same); *Chittick v. Freedom Mortg. Corp.*, No. 1:18-cv-01034 (AJT/MSN), 2021 WL 5326407, at *10 (E.D. Va. May 7, 2021) (same).

In sum, the two classes the district court certified here present the very sort of administrative nightmare that the class action device is intended to avoid.

## CONCLUSION

For the foregoing reasons, Aetna requests that the Court grant its petition and allow an interlocutory appeal of the order certifying classes.

Respectfully Submitted August 22, 2023

<div style="margin-left: 40%;">

*/s/ E. Thomison Holman*
E. Thomison Holman
NC Bar No. 19380
HOLMAN LAW, PLLC
56 College Street, Suite 302
Asheville, NC 28801
Tel: (828) 252-7381
tom@holmanlawwnc.com

Earl B. Austin
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
Tel: (212)408-2500
earl.austin@bakerbotts.com
*Counsel for Defendants-Petitioners*
*Aetna Inc. and Aetna Life Ins. Co.*

</div>

<u>**CERTIFICATE OF COMPLIANCE**</u>

This brief complies with the type-volume limitations of Fed. R. App. P. 5(c)(1) as it contains 5,161 words, excluding the parts of the document exempt by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Century Schoolbook 14-point font.

August 22, 2023

<u>*/s/ Earl B. Austin*</u>

Earl B. Austin

*Counsel for Defendant-Petitioner Aetna Inc. and Aetna Life Ins. Co.*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed with the Clerk of Court for the United States Court of Appeals for the Fourth Circuit through the appellate CM/ECF system on August 22, 2023 and served on all parties or their counsel of record by serving a true and correct copy at the addresses listed below per consent of counsel:

Andrew Goldfarb
agoldfarb@zuckerman.com

Nell Peyser
npeyser@zuckerman.com

This 22nd day of August, 2023

*/s/ Earl B. Austin*

Earl B. Austin

*Counsel for Defendant-Petitioner Aetna Inc. and Aetna Life Ins. Co.*